1

1              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - X
3
     TODD C. BANK,                :    15-CV-5708(CBA)
4                                 :
              Plaintiff,          :    U.S. Courthouse
5                                 :    Brooklyn, New York
                                  :
6                                 :    TRANSCRIPT OF
        -against-                 :    PROCEEDINGS
7                                 :
                                  :
8                                 :    April 25, 2017
                                  :    3:00 p.m.
9      LIFEWATCH, ET AL,          :
                                  :
10           Defendants.
   - - - - - - - - - - - - - - X
11
   BEFORE:
12              HONORABLE CAROL B. AMON, U.S.D.J.

13 APPEARANCES:

14 For the Plaintiff:        TODD C. BANK, ESQ.
                            PRO SE
15

16

17
   For the Defendants:      THE SULTZER LAW GROUP P.C.
18                          77 Water Street
                            8th Floor
19                          New York, NY 10005
                            BY:  JOSEPH LIPARI, ESQ.
20

21
   Court Reporter:      Holly Driscoll, CSR
22                      Official Court Reporter
                        225 Cadman Plaza East
23                      Brooklyn, New York 11201
                        (718) 613-2274
24

25 Proceedings recorded by mechanical stenography, transcript
   produced by Computer-Assisted Transcript.

2

1          THE CLERK:  Bank v. Lifewatch, et al, 15 CV 5708, on

2    for oral argument.

3          THE COURT:  All right, do the parties want to state

4    their appearances please.

5          MR. BANK:  Todd Bank for the plaintiff.  Good

6    afternoon.

7          THE COURT:  Good afternoon.

8          MR. LIPARI:  Good afternoon, Your Honor, Joseph

9    Lipari on behalf of each of the defendants, Lifewatch, Inc.,

10   Lifewatch Security, Inc., Safe Home Security, Inc. and Evan

11   Sirlin.

12         THE COURT:  This is summary judgment, correct?

13         MR. LIPARI:  Yes, Your Honor.

14         THE COURT:  And discovery is closed in this case,

15   correct?

16         MR. LIPARI:  Yes, Your Honor.

17         THE COURT:  You agree with that, Mr. Bank?

18         MR. BANK:  Yes.

19         THE COURT:  All right.  So, the first question that

20   I have, maybe I'll address this to Mr. Bank to just get things

21   rolling, how have you made out in the case against Mr. Sirlin?

22         MR. BANK:  I think the issue is that Sirlin is

23   simply giving a boilerplate I didn't do it, I didn't direct

24   anything.

25         THE COURT:  What evidence do you have that he did?

3

1  This is summary judgment.  You have the burden of proof.  I

2  have an affidavit from him saying that the -- let's see -- I

3  mean don't you essentially have to pierce the corporate veil

4  here?

5          MR. BANK:  No, that's not the basis, Judge.

6          THE COURT:  Okay.  What's the basis?

7          MR. BANK:  That as the CEO, as the sole principal of

8  two of the three defendants, the Lifewatch defendants, he

9  directs its day-to-day operations, he's the head of what is a

10  very small company.

11          THE COURT:  He says, "I didn't make the telephone

12  calls."  What is the basis to sue him in his individual

13  capacity?

14          MR. BANK:  Because he was the one who arranged for

15  the relationships with the third parties that made the calls.

16  I'm not trying to pierce the corporate veil, but when he says,

17  for example, that he didn't make the calls, I never suggested

18  that he did.

19          THE COURT:  So, what do you have to show for this

20  case, what kind of showing do you have to make to establish

21  his liability?

22          MR. BANK:  Well, I think the showing that I would

23  have to make at trial is different than what I would have to

24  show to defeat summary judgment.

25          THE COURT:  No, it isn't.  He says, "I didn't do

4

1 this," so you have to -- he said, let's see if I have it

2 specifically, "I didn't direct anyone to make the phone

3 calls."  That's essentially what he said.

4     MR. BANK:  And if he didn't but, again, that's not

5 enough because if he entered into a relationship with these

6 companies and he knew that they were going to make the phone

7 calls.

8     THE COURT:  Well, he doesn't say that he knew they

9 were -- what proof is there that he knew they were going to

10 engage in robo calling?

11     MR. BANK:  Just to go back for a second, Your Honor,

12 his statement that he didn't direct them to make the calls is

13 very vague.  It's very vague.

14     THE COURT:  What evidence do you have that he did?

15     MR. BANK:  I'm not claiming --

16     THE COURT:  They filed a Rule 56 statement and he

17 says, "I didn't do this," and so there's a statement to that

18 effect and what evidence do you have that he did?

19     MR. BANK:  Well, again, that's the issue here which

20 is both the Rule 56.1 statement and Mr. Sirlin's declaration

21 are rather vague and, as I said a moment ago, I am not

22 claiming that Mr. Sirlin or even Lifewatch for that matter

23 physically made the calls but if Mr. Sirlin, if as I allege in

24 the amended complaint, if Mr. Sirlin entered into these

25 relationships with these third parties and directed

5

1   Lifewatch's day-to-day operations, I think that's enough if

2   these third parties then, as I do allege of course, made these

3   phones calls.

4           THE COURT:  How does it make him personally liable

5   as opposed to the company being liable?

6           MR. BANK:  Because if he dealt with these companies

7   and he knew what these companies were going to be doing.

8           THE COURT:  What evidence do you have that he knew

9   what the companies were doing, that he personally knew what

10  the companies were doing?

11          MR. BANK:  Well, as I talk about in -- first of all,

12  he's the person that signed the contracts, Mr. Sirlin.

13          THE COURT:  Where are the contracts?  Do the

14  contracts say that they're going to be making phone calls?

15          MR. BANK:  No, but what I cite on page two, it's

16  document number 55 in my memorandum in opposition, the

17  purchase agreements, and they're all uniform agreements with

18  all these third-party telemarketers, say that the

19  telemarketers cannot violate the TCPA, the statute here, and

20  as the Court said in relation to principal agency issues,

21  contractual labels have little bearing on whether a principal-

22  agent relationship exists, and this is really the overarching

23  theme of the case of FTC and the State of Florida against both

24  Lifewatch and Mr. Sirlin personally and I cite that in the

25  brief which is what the entire structure of both -- of the

6

1   relationship between Lifewatch and Mr. Sirlin and then these

2   third parties on the other hand were all geared toward getting

3   around the prohibitions of the TCPA and other statutes as

4   well.  But there are a number of arguments that Lifewatch

5   makes here that were very forcefully rejected by the district

6   court in Chicago in the FTC case.

7          Again, Lifewatch says here, as Mr. Sirlin says here

8   and they both said in that other case, that there's no agency,

9   we hire these companies and they call it -- the judge quoting

10  yet another case against Lifewatch calls it the ostrich

11  defense.  Lifewatch notwithstanding literally billions, and I

12  mean with a B, according to the FTC decision, even though

13  literally billions of phone calls were made, four of which are

14  at issue in this case, Lifewatch's contention is they didn't

15  know anything, they're in the dark and the court in the FTC

16  case rejected that.

17         THE COURT:  All right.  Is it your position that the

18  president of any corporation is always guilty if the

19  corporation is guilty of these offenses?

20         MR. BANK:  Liable -- no, not --

21         THE COURT:  Liable, sorry.

22         MR. BANK:  That's okay, I'm just being as precise as

23  I can.  No, absolutely not but, again, he's the sole --

24         THE COURT:  What have you shown about Mr. Sirlin

25  that suggests that he is liable, what do you have other than

7

1   his position as president of the company?

2          MR. BANK:  He's the person who signs the contracts

3   with these third parties but, again, the point is, and this is

4   why I did not submit a Rule 56.1 statement is because I don't

5   think the defendants, including of course Mr. Sirlin, met

6   their burden by saying vaguely, "I didn't direct them to do

7   it," but he signed the contract and he knew, the allegation is

8   that he knew that that was going to happen.  He didn't say in

9   his declaration that when he signed this contract he did not

10  know that these third parties --

11         THE COURT:  Did you respond to the 56.1 statement?

12         MR. BANK:  No, because I didn't think I had to.

13         THE COURT:  Doesn't that mean you admit it all if

14  you didn't respond to it?

15         MR. BANK:  Sure but, again, I don't think they met

16  their burden.  If the Court accepts --

17         THE COURT:  Well --

18         MR. BANK:  -- as it should, I agree that because I

19  didn't respond and I --

20         THE COURT:  If you don't respond then you're

21  admitting to what they say, correct?

22         MR. BANK:  Yes, but -- I am but I don't think what

23  they say is sufficient to meet their burden on the motion.  It

24  is still their burden and I don't think by saying they didn't

25  direct -- they didn't do it themselves, I don't claim that

8

1   they have, that they did, but saying that Mr. Sirlin or

2   Lifewatch didn't, quote unquote, direct the third party to

3   make the calls at issue I don't think is enough to meet their

4   burden, otherwise I would have responded with a Rule 56.1

5   statement.  They have a vague in paragraph eight of --

6          THE COURT:  How about let's take Safe Home.

7          MR. BANK:  Sure.

8          THE COURT:  Lifewatch is not and has not been owned

9   by Safe Home Security.  You don't deny -- you don't challenge

10  that, so how is Safe Home still in this case?

11         MR. BANK:  Because Safe Home is the company that --

12  when first the call is made in this case, I answer the phone

13  call and I hear the prerecorded message and I'm told to press

14  a button on my telephone if I want to speak to someone.  I

15  press the button and then I speak to a person who I allege is

16  with Safe Home and then Safe Home in turn transfers me to

17  whatever they call the shipping department, the verification

18  department, it is several transfers ultimately going to

19  Lifewatch.  So, whether Safe Home jointly provides --

20         THE COURT:  Is that in your papers somewhere?

21         MR. BANK:  It is in the complaint.  I have the

22  complaint.

23         THE COURT:  You don't say anything in your papers I

24  don't think about --

25         (Pause.)

9

1          THE COURT:  You don't say that in response in your

2    papers, you just say -- I don't know what you say but --

3          MR. BANK:  Well, I didn't have much to say really

4    about Safe Home.  What I did say though is, and this is on

5    page five of my opposition, again it is document number 55.

6          THE COURT:  Your declaration doesn't say anything

7    about talking to anyone, being transferred.  You say you talk

8    to somebody from American Medical Services and then you get

9    transferred to Lifewatch.

10         MR. BANK:  Well, American Medical Services and the

11   other names are all fictitious names.

12         THE COURT:  Well, I know but how do you get Safe

13   Home in this or whatever the name of the place is.

14         MR. BANK:  Right, but, again, in the complaint first

15   when I refer to the joint services, it doesn't necessarily

16   mean that they provided services with respect to the medical

17   alert devices, I'm talking about services with respect to the

18   phone calls, they take the first transfer and then --

19         THE COURT:  You say Safe Home owns Lifewatch.

20         MR. BANK:  That's what I was told.

21         THE COURT:  Well, maybe that's what you were told.

22   They've denied it, you haven't proved it sufficiently.

23         MR. BANK:  That's fine and I don't think -- as the

24   Court must assume that that is not the case, I don't think

25   that shows that Safe Home has met their burden.  If Safe Home

1   is the company --

2            THE COURT:  You had the burden of offering evidence

3   to show that you have a cause of action.  They've got to show

4   that there is no cause of action but you can't simply respond

5   to that by saying they've got the burden when you haven't

6   offered anything.

7            MR. BANK:  I think the initial burden is on the

8   defendants and I don't think -- that's why, again, I didn't

9   submit a Rule 56 statement because I don't think the

10  defendants met their burden and, of course, they claim that

11  they have, I understand.  If they had, then the burden would

12  shift.

13           Just by way of example, if they simply -- this is

14  not the case, just by way of example, again if the defendant

15  said the entire thing is they submitted a memo and said we're

16  not liable and that's was all that existed --

17           THE COURT:  We're not liable is different from we

18  don't own Safe Home.

19           MR. BANK:  I don't think they need to own Safe Home

20  in order for Safe Home to be liable.

21           THE COURT:  No, maybe not but what did Safe Home do?

22  All you allege is Safe Home owns Lifewatch, Safe Home along

23  with Lifewatch and Lifewatch Security jointly provide

24  services.

25           MR. BANK:  The services, right, those services are

1  relating to the phone calls, not the medical alert devices and

2  Mr. Sirlin doesn't, although he says we don't provide joint

3  services, first of all, that's not Safe Home, by the way,

4  saying that, so Safe Home didn't really even move for summary

5  judgment.

6           THE COURT:  You can't just rely on that, this isn't

7  a motion to dismiss, you have to come forward with some

8  evidence.  They say that they don't own them.  I don't see

9  anything in your -- I don't even see anything in your

10  complaint about Safe Home other than that it owns Lifewatch.

11  Where do you say something else?

12           MR. BANK:  Sure, in paragraph 14 of the complaint,

13  docket number one, paragraph 14:  Safe Home Security along

14  with Lifewatch, the Lifewatch defendants, jointly provided

15  services -- I do say with respect to the medical alert system

16  that the automated calls concern.

17           THE COURT:  What proof do you have of that?  This is

18  summary judgment, what proof have you offered of that?  They

19  say there's no connection, they come forward and say -- I mean

20  you had the chance to conduct discovery.

21           What proof do you have of any relationship between

22  Safe Home Security and Lifewatch or any proof that you've

23  gathered through discovery to say that they jointly provide

24  services with respect to the medical alert system?  I didn't

25  see that phone call where you talked about -- where you said

12

1   somebody answered the phone from Safe Home.

2          MR. BANK:  Well, in the -- I'm looking at the

3   complaint here, again not very artfully, paragraph 14 is

4   referring or at least should be referring in part to the calls

5   but, again, the point is --

6          THE COURT:  You don't allege here -- a moment ago

7   you told me in your complaint there was a statement you

8   answered the phone, somebody put you through to somebody named

9   Safe Home and I don't see that in the complaint.

10         MR. BANK:  No, it is not as clearly stated as --

11         THE COURT:  I guess not, it is not remotely stated

12  anywhere.

13         MR. BANK:  Accepting again -- but I do describe what

14  happened when I received the phone call.

15         THE COURT:  Where?

16         MR. BANK:  In paragraph ten, it's on page two.

17         MR. LIPARI:  Are you looking at record document 37?

18         MR. BANK:  No.

19         MR. LIPARI:  That's the amended complaint.

20         MR. BANK:  I'm sorry, no.

21         MR. LIPARI:  That's the complaint in this case.

22         MR. BANK:  I apologize, I --

23         THE COURT:  I'm looking at Document 37.

24         MR. BANK:  Okay.

25         THE COURT:  I don't see anything about Safe Home.

13

1        MR. BANK:  Again, I think it still goes back to the

2   question of whether it is enough for Safe Home to avoid

3   liability by having Lifewatch, not even Safe Home saying we

4   don't own them or we don't jointly provide services.

5        THE COURT:  What evidence do you have?  Have you put

6   forth that they had anything to do with anything, other than a

7   conclusory statement in a complaint that they have provided

8   services?

9        MR. BANK:  Again, I don't think they've refuted that

10  though, that's the problem.  They haven't really.

11       THE COURT:  We're talking about summary judgment.

12       MR. BANK:  Right.  Again, I think the defendants

13  still bear that initial burden which again, of course, they

14  say they've met it.  I don't think they have.

15       THE COURT:  What proof do you have of the

16  relationship?  You're at trial now, okay, what proof are you

17  going to offer?

18       MR. BANK:  If I were at trial, I would offer

19  records from the -- I think it is the Connecticut Secretary

20  of State.

21       THE COURT:  Why didn't you have those for summary

22  judgment?

23       MR. BANK:  Because I don't think the ownership

24  really was relevant but I obviously would call witnesses from

25  or a witness from Safe Home and so forth.

14

1          THE COURT:  I'm granting summary judgment with

2     respect to Safe Home, that's ridiculous, you can't proceed

3     this way.

4          All right.  Let me hear you --

5          MR. BANK:  I understand.

6          THE COURT:  -- with respect to your claims against

7     Lifewatch.

8          MR. LIPARI:  Your Honor, may I also speak as to the

9     claim against Sirlin?

10         THE COURT:  Yes.

11         MR. LIPARI:  So, Your Honor, Mr. Bank conceded that

12    he did not put in any documentation in opposition to our

13    statement of undisputed facts.  He also conceded that given

14    that he didn't put in the opposition, those statements of

15    facts are deemed admitted.

16         It appears that with respect to Sirlin, his only

17    contention is that we have not gone far enough in terms of

18    meeting our burden but, Your Honor, the case that we cite,

19    Bais Yaakov of Spring Valley versus Graduation Source LLC,

20    Southern District of New York, March 29, 2016, is right on

21    point and it shows that in fact we have met our burden and he

22    is entitled to summary judgment.

23         In that case the Court indicated New York follows

24    the same general tort rule regarding personal liability of

25    corporate officers and so, in accordance with New York law, an

1  officer can only be held personally liable for violations of

2  the TCPA if:  "He had direct personal participation in or

3  personally authorized the conduct found to have violated the

4  statute."

5          Mr. Sirlin has explicitly indicated in his affidavit

6  which is unrefuted and the statement of facts which are

7  unrefuted that he did not personally participate in or

8  personally authorize the conduct found to have violated the

9  statute.  So, Your Honor, we have met our burden.

10          THE COURT:  Well, he signed the agreement with the

11  company that did purportedly violate the statute, correct?

12          MR. LIPARI:  Sure, Your Honor, but that's certainly

13  not enough to pierce the corporate veil.

14          THE COURT:  Do you have to technically pierce the

15  corporate veil?

16          MR. LIPARI:  Your Honor, we would suggest that yes,

17  you would have to pierce the corporate veil.  The case law is

18  admittedly a little unclear on that which is why Mr. Sirlin

19  also talks about, you know, the company not being

20  undercapitalized and no commingling of funds within his

21  affidavit, but, yes, our contention is that you would have to

22  pierce the corporate veil and in order to pierce the corporate

23  veil, you have to establish that he personally participated in

24  or personally authorized the conduct and in this instance it's

25  unrefuted that he didn't do any of those things.

16

1          Now, with respect to signing the contract, there

2     is nothing that would enable Mr. Bank to hold Mr. Sirlin

3     personally liable simply because as CEO he signed a generic

4     purchase agreement with outside marketing companies and

5     those outside marketing companies, all right, if we're to

6     believe the narrative, went rogue and, notwithstanding the

7     explicit warrants and covenants within the contract, violated

8     the TCPA.  I mean it is just too many links to get to

9     Mr. Sirlin but, in any event, per that case that we cited he

10    has met his burden.

11         Mr. Bank came forward with nothing.  As Your Honor

12    pointed out, we met our prima facie burden by demonstrating

13    entitlement to summary judgment.  Respectfully, Your Honor, I

14    think the only thing -- the only facts that need be considered

15    by this Court for the purposes of a summary judgment motion

16    are the facts that are undisputed and then this one page, you

17    know, really one paragraph declaration that in no way can hold

18    any of the defendants liable.  I mean as Your Honor pointed

19    out, there's no reference to Safe Home and there's certainly

20    no ability to use this, you know, narrative that Mr. Bank puts

21    forth to hold Mr. Sirlin personally liable especially since

22    he's put it in an affidavit and met the standard.

23         THE COURT:  When you say affidavit, are you talking

24    about the declaration of Mr. Bank?

25         MR. LIPARI:  Yes, Your Honor, sorry, yes, the

17

```
1   declaration of Mr. Bank, there's nothing in there that would

2   in any way refute what Mr. Sirlin has stated or undermine the

3   statement of facts and, like I said, we would just point to

4   that one particular case, the Graduation Source LLC case in

5   the Southern District of New York and the standard is right

6   there and we've met it.

7              THE COURT:  What is the standard in that case?

8              MR. LIPARI:  That in order to hold an officer

9   personally liable for violations of the TCPA, you have to --

10  the plaintiff would have to demonstrate that that officer had

11  direct personal participation in or personally authorized the

12  conduct found to have violated the statute.

13             So, first you have to find the conduct violated the

14  statute, then you have to find --

15             THE COURT:  Well, there's no dispute based on the

16  allegations that the conduct violated the statute, correct?

17             MR. LIPARI:  Well, Your Honor, for purposes of this

18  summary judgment motion, we're not taking issue with that,

19  yes, that portion of it.  For purposes of the summary judgment

20  motion, it's just left unaddressed.  So, anyway, that's the

21  standard with respect to holding Mr. Sirlin personally liable

22  and, Your Honor, I think we met that standard, there's

23  absolutely no ability to refute it.  Mr. Bank has come forward

24  with nothing remotely that could hold Mr. Sirlin personally

25  liable.
```

18

1          THE COURT:  What about the company?

2          MR. LIPARI:  Well, with respect to the company, Your

3     Honor, again -- and I can get into a full presentation or

4     analysis in terms of agency which we set forth in our

5     briefing.

6          THE COURT:  Well, what about apparent agency --

7     apparent authority, rather?  This company makes a robo call

8     and suddenly you're talking to someone from Lifewatch; why

9     isn't that enough to take you over the hump with respect to

10    Lifewatch at least?

11         MR. LIPARI:  Okay.  Your Honor, so, apparent

12    authority can only be established by proof of something said

13    or done by the principal, meaning Lifewatch, upon which the

14    plaintiff, Mr. Bank, relied.  Here there is no indication that

15    Lifewatch did or said anything upon which Mr. Bank relied.  I

16    mean first there's a threshold matter, Mr. Bank didn't

17    purchase the product, didn't rely upon representations.

18    Second of all, it is undisputed --

19         THE COURT:  Well, that's not -- I mean the

20    connection is this is one of the banned robo calls, right, so

21    he doesn't have to rely on or purchase anything for there to

22    be a problem.

23         MR. LIPARI:  Well, Your Honor, there's no evidence

24    from which you could trace plaintiff's belief that the

25    interaction that he had on the phone was specifically

1  authorized or directed by Lifewatch.

2       THE COURT:  Well, he's transferred to someone who

3  says they're from Lifewatch, right?

4       MR. LIPARI:  Well, Your Honor, at this point this --

5  he states:  I was transferred to Shipping and was told that I

6  was speaking to an employee of Lifewatch in Cromwell,

7  Connecticut; so, I was told that I was speaking to an employee

8  of Lifewatch in Cromwell, Connecticut.

9       So, it would appear, Your Honor, that the only basis

10 to hold Lifewatch in this case would be this hearsay

11 statement, potentially double hearsay.  Now, admittedly, Your

12 Honor, sometimes hearsay can come into play within the context

13 of a summary judgment proceeding but when it's the sole basis

14 to hold a company in the case, that hearsay has to be

15 rejected, especially when you look at Mr. Sirlin's affidavit

16 where he indicated that any transfer of the call would have

17 been to Med Guard which is a completely separate company, it

18 is a third company, it is not Safe Home, it is not Lifewatch,

19 it is a separate company in Connecticut.  Presumably if

20 Mr. Bank spoke to anybody, he spoke to someone at Med Guard

21 and there's direct evidence for that.

22       THE COURT:  But except he's saying that he said he

23 was speaking to an employee of Lifewatch.

24       MR. LIPARI:  No, Your Honor, he says --

25 respectfully, he says:  I was told that I was speaking to an

20

1   employee of Lifewatch.  So, I don't know -- you know, it's

2   unclear from this who told him that, that's a hearsay

3   statement, Your Honor.  So, my point is simply that needs to

4   be disregarded.  If that's the sole basis --

5            THE COURT:  Suppose I don't disregard it, so you get

6   the robo calling company transfers him to someone and they

7   say, "I'm from Lifewatch" -- by the way, they're selling

8   products of Lifewatch, right?

9            MR. LIPARI:  Yes, Your Honor, generally speaking,

10  yes, generally speaking, yes.  I mean what Mr. Sirlin says,

11  because it is somewhat important, I mean that's not a bad

12  generic description for it, basically these outside sellers

13  are selling generic medical alert devices and then the order

14  is fulfilled either by Lifewatch or one of its competitors and

15  Mr. Sirlin says these people, they don't only sell to

16  Lifewatch, they sell to our competitors as well.

17            So, Your Honor, if that -- if you did not disregard

18  that statement, notwithstanding our contention that it is

19  hearsay, it's still not enough and the reason we contend it's

20  still not enough is because Mr. Bank being told that he's

21  speaking to someone associated with Lifewatch, right, does not

22  necessarily -- well, I mean I guess we have to assume as true

23  the fact that, you know, indeed he was speaking to someone

24  from Lifewatch, right, so not only do we accept the hearsay

25  but then we also assume as true the fact that he was speaking

21

1    to someone from Lifewatch.

2         I would say, Your Honor, even with a transfer,

3    there's no indication that Lifewatch had any -- was the

4    driving force behind that initial telephone call and I think

5    that's what would have to be shown, some connection, because

6    what Mr. Sirlin has demonstrated is that to the extent that

7    these calls were transferred, the calls could have been

8    transferred to Med Guard, never Lifewatch, Med Guard which

9    worked with Lifewatch or one of Lifewatch's competitors.

10        THE COURT:  Why would it be transferred to one

11   of Lifewatch's competitors if it was selling the Lifewatch

12   stuff?

13        MR. LIPARI:  Because, Your Honor, as he indicates in

14   his affidavit, what they were doing was selling general --

15   generic medical alert devices, they never said Lifewatch, and

16   I think Mr. Bank talks about that in his description of the

17   call perhaps but, in any event, it was a generic medical alert

18   device.  As Mr. Sirlin indicates, they could have sought out

19   Lifewatch to fulfill the order or one of Lifewatch's

20   competitors.

21        THE COURT:  Med Guard works for Lifewatch, right?

22        MR. LIPARI:  Correct, it is a separate company and

23   per the affidavit they do this verification process so that

24   when they have incoming customers, Med Guard, not Lifewatch,

25   will do order fulfillment and talk to the customer.

22

1          THE COURT:  But they're getting the stuff from

2    Lifewatch?

3          MR. LIPARI:  Correct, ultimately Lifewatch would

4    fulfill the order.

5          THE COURT:  Is there a statement from any of the

6    Rule 56 that calls were never transferred to Lifewatch?

7          MR. LIPARI:  That calls were never -- oh, let me

8    look at -- (pause.)

9          MR. LIPARI:  Well, Your Honor, I think that

10   inference can be made because here's the actual statement,

11   it's paragraph eight within Mr. Sirlin's declaration:

12   Lifewatch uses a verification program wherein outside sales

13   companies who obtain customer accounts that they intend to

14   offer for sale to Lifewatch transfer calls to third-party

15   company Med Guard Alert, Inc. which verifies the potential

16   customer's name, address, phone number and payment

17   information.

18          So, there's not been a definitive statement, you

19   know, a call is never transferred to Lifewatch but, Your

20   Honor, the clear implication from this statement is that's the

21   way their process works.

22          THE COURT:  Assuming that it's a valid application

23   that it's transferred to Lifewatch, why couldn't one draw from

24   that apparent authority based on the fact that the robo caller

25   transfers them to Lifewatch?  Wouldn't you assume that

23

1   Lifewatch -- wouldn't it be a reasonable assumption that

2   Lifewatch was authorizing the call if the person answers the

3   phone call and is transferred to Lifewatch?

4           MR. LIPARI:  You're saying if we assume that the

5   call was actually transferred to Lifewatch as opposed to

6   Med Guard?

7           THE COURT:  Right.

8           MR. LIPARI:  I would say no, Your Honor, and the

9   reason being there was an initial call, right, and an initial

10  interaction and thereafter the call was transferred.  So, that

11  transfer and any subsequent conversations didn't necessarily

12  have anything to do with the underlying robo call.

13          THE COURT:  How did he get to Lifewatch?  He was

14  transferring the robo call.

15          MR. LIPARI:  Your Honor, I hear your point but the

16  complication I suppose is Mr. Sirlin's statement that it could

17  have been transferred not only to Lifewatch but to any of the

18  other competitors and to the extent that it was a call that

19  would have been fulfilled by Lifewatch, it didn't even go to

20  Lifewatch, it would have gotten to Med Guard.

21          I mean, Your Honor, I certainly hear your point, I

22  would just emphasize that it's our contention, again, that

23  apparently, you know, this one particular statement, you know,

24  might be the sole basis upon which to hold Lifewatch liable

25  and that would be as to the apparent authority component of

24

1    it.

2             THE COURT:  Well, I'm going to deny summary judgment

3    with regard to Lifewatch on the apparent authority.  I'll

4    grant summary judgment with respect to both Mr. Sirlin and

5    Safe Home.

6             Thank you.

7             MR. LIPARI:  Thank you, Your Honor.

8             MR. BANK:  Thank you, Your Honor.

9             (End of proceedings.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25